HAWTHORNE, Justice.
Mrs. Emma Spearman instituted this suit against Percy W. Willson and his wife, Mrs. Marian Craig Willson, seeking a judgment for $6,800, alleged to be the balance of a deposit of $10,300 which she had made with the defendants. Defendants denied the indebtedness. After trial the district court dismissed plaintiff’s suit, and she has appealed.
The district judge concluded that plaintiff Mrs. Spearman had not proven that the defendants were indebted to her in the sum of $6,800. He also concluded that even if it were clearly shown that defendants owed plaintiff this exact amount, plaintiff couíd not recover because she had deposited the money with defendants for the illegal purpose of hiding it from a creditor to prevent its seizure. Such a transaction, the judge concluded, was contra bonos mores and fraudulent, neither party could come into court and seek relief from the other, and in such a case the law leaves the parties with the illicit loss or gain where it finds them. In support of this proposition of law he cites articles of the Code and decisions of this court.
It is necessary to set out the facts of this case in detail. In 1946 Archibald A. Marx and others, doing business as American Heating & Plumbing Company, obtained a judgment in the Civil District Court for the Parish of Orleans against Mrs. Spearman in the sum of $3,943.29. From this judgment Mrs. Spearman perfected a devolutive appeal to this court. While that appeal was pending here, Mrs. Spearman delivered to the Willsons manila envelopes which she contends contained $10,300, to be kept in the Willsons’ safety deposit box in the National Bank of Commerce in New Orleans. This was done on the advice of an attorney (now deceased) to prevent the judgment creditor from seizing her property during the pendency of the devolutive appeal.[1] It is conceded by all parties that while Mrs. Spear-man’s appeal in that case was pending in this court and shortly after she had deposited these envelopes with the Willsons, *85 Mrs. Spearman with Mrs. Willson’s assistance withdrew $1,000 from one of the envelopes. In 1949 this court affirmed the judgment against Mrs. Spearman. See Marx v. Spearman, 216 La. 21, 43 So.2d 146.
In November, 1949, on the very day following the finality of the Marx judgment, an attorney then representing Mrs. Spear-man wrote Mrs. Willson, calling her attention to the fact that the judgment in question was final, and that it was necessary for Mrs. Spearman to raise the money to pay the judgment without further delay. In this letter the attorney requested Mrs. Will-son to return to Mrs. Spearman the funds entrusted to her for safekeeping which she had theretofore admitted possessing but which she had consistently failed and refused to return for one excuse or another. Mrs. Willson soon acknowledged receipt of this letter, saying: “* * * You are accusing me of withholding certain funds and cash which I never received, so therefore cannot withhold. * * *”
When plaintiff was unable to obtain her money from defendants despite numerous demands, she borrowed money, paid her creditors, and satisfied the judgment rendered against her in the Marx case.
In 1950 Mrs. Spearman asked the district attorney’s office to help her recover her money. As a result of pressure from the district attorney’s office Mrs. Willson, who had previously denied having any of plaintiff’s money, paid plaintiff $2,500. After this payment Mrs. Willson took the position that she had no money of Mrs. Spearman’s because she had given her back all of it.
At this stage Mrs. Spearman had recovered a total of $3,500 out of the funds deposited with defendants. She continued to request defendants to return the balance of $6,800, and we think the record establishes beyond any question that they had retained this sum in their possession.
During the trial of this case there were offered in evidence recordings of two telephone conversations between plaintiff and the defendant Mrs. Willson. The authenticity of these conversations is established beyond any question, and Mrs. Willson does not deny that it was she who talked to Mrs. Spearman. These conversations occurred in May and June, 1951, long after defendant had given back to plaintiff $2,500 under pressure from the district attorney’s office. In these conversations, at a time when defendant thought it perfectly safe to do so, she admitted she was indebted to plaintiff. She said that she had invested $6,800 of plaintiff’s money but refused to tell where this investment had been made or where the money was. When Mrs. Spear-man stated that she needed at least part of this money immediately, Mrs. Willson promised to try to get $1,000 or $1,500 within a few days. We quote from these conversations:
*87 “* * * Mrs. S.: * * * I’ve been thinking about the investment you made with my money. Why didn’t you tell me that before, Marion? If you’ve invested the money that would be alright? Why didn’t you tell me?
“Mrs. W.: I tried to tell you before but I didn’t say an investment.
“Mrs. S.: Well it would have been alright if you wanted to invest that money. It would have been perfectly alright. Did you invest it all, the whole $6,800.? Marion?
“Mrs. W.: Yes.
“Mrs. S.: You invested it all? Well, do you think I could get part of it back and we’d just leave the rest there if it’s drawing big interest?
“Mrs. W.: Well, I can get some, I told you that, but I can’t get it today.
“Mrs. S.: Well, how soon could you get it, Marion?
“Mrs. W.: I guess a couple of days.
“Mrs. S.: Well, you see tomorrow’s a holiday, the banks are all closed.
“Mrs. W.: I know, but then there’s Thursday and Friday.
“Mrs. S.: Thursday and Friday, yeah, how much do you think you could get me of that $6,800, Marion? Do you think you could get me $1,000 ?
“Mrs. W.: I think I can.
ífí ^
“Mrs. S.: Well you know when I had to go pay these judgments I had to borrow $9,000 from the homestead. Do you know I’m paying in between $40 and $45 a month interest. I showed you my book, do you remember?
“Mrs. W.: Well that seems like a terrible interest.
“Mrs. S.: Well that’s the homestead. You have to pay what they say, you see. So I sure can use all you can get for me. What do you think you can get?
“Mrs. W.; I don’t know. I’m trying to get $1,500, but I didn’t want to say anything about it because I didn’t want to raise your hopes then disappoint you.
“Mrs. S.: Yeah, $1,500 — well you know when I made that loan of $9,000 from the homestead, do you remember, I showed you my book. At that time you had $9,300 of mine in the bank, and I’ve gotten $2,500, but my God I need some money, Marion. I hate to come down, I’m a nervous wreck. You know that I’ve teen a nervous wreck.
* ^ íjí iji * ‡
“Mrs. S.: Well now, out of that $6,800 will you try to get me $1,000 anyway ?
“Mrs. W.: Well I’m going to try. I don’t want you to be disappointed on it and then be disappointed and say that I did it on purpose because,
‡ ‡ ‡ * ifc ijc
*89 “Mrs. S.: Uh, huh. Well, Marion, I hate to say this but I’ve got to have some money, and if you don’t let me have some I’m definitely gonna go back to the District Attorney’s office. I’ve just got to have some of that $6,800. I’ve got to have it, Marion, I explained to you why I was so far in debt. Everybody’s given me credit and I've promised and promised.
“Mrs. W.: Yeah, I know that.
“Mrs. S.: Well you know that, honey, but why can’t you get me some money. Even if you’ve invested it you could get it back couldn’t you ?
“Mrs. W.: Well that’s what I’m trying to do. That’s what I wanted to tell you. * * *”
Thus plaintiff has proven to our satisfaction that the defendants owe her $6,800, and we think she should have judgment for this amount because under the particular facts of this case the principle of law relied upon by the trial judge should not be applied.
We do not, of course, approve of Mrs. Spearman’s transferring her property to defendants so that it could not be seized by the judgment creditor. However, the fact remains that immediately after the judgment in the Marx case became final, she sought a return of this money for the purpose of paying this particular judgment, and, being unsuccessful, she borrowed the money and paid her creditors. Under these circumstances to permit defendants to keep plaintiff's money would result in an unjust enrichment to them, for they would thus retain property of the plaintiff for which they gave nothing. Moreover, they would be allowed to breach their obligation to return the money entrusted to them and to profit by their own wrongdoing. This we cannot permit them to do.
When plaintiff sought to put her money out of her creditors’ reach, the defendants connived with her in this wrongful act. But the defendants, having connived with plaintiff to commit this wrong, are now committing a greater wrong by retaining property which does not belong to them and to which they have no right whatever.
Nothing that we have said should be construed to mean that we do not approve the principle of law relied on by the trial judge. However, under the peculiar facts of this case, as stated above, we do not think we would be justified in leaving the parties in the same position in which we found them on the theory that both plaintiff and defendants have unclean hands. Regardless of what intent Mrs. Spearman may have had when she placed the money in the custody of the defendants, the fact remains that no creditor was defrauded. A conclusion that she intended actually to defraud her creditors is greatly weakened by the fact that she took steps to pay them as soon as the *91 Marx judgment became final, and even borrowed the money to do so when she could not get her own funds back from the Will-sons.
For the reasons assigned the judgment appealed from is annulled, reversed, and set aside, and it is now ordered that plaintiff, Mrs. Emma Spearman, have judgment as prayed for against defendants, Percy W. Willson and Mrs. Marian Craig Willson, in solido [2] for the full sum of $6,800 with legal interest thereon from judicial demand until paid. Defendants-appellees are to pay all costs of this suit.

. At about the same time Mrs. Spearman transferred to the Willsons-by simulated sale a valuable piece of real estate situated in New Orleans, ’ a counter letter being executed to show the true intent of the parties. The real estate was later reconveyed to Mrs. Spearman.

. No issue is made in this court of the fact that plaintiff here seeks a judgment against both husband and wife in solido.